SYLVESTER GRUSZKA *et al. vs.* IRENE C. STASZ, *Ex.*

APRIL 3, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an appeal from a decree of the probate court of the city of Woonsocket admitting to probate a certain instrument purporting to be the last will and testament of Andrnej Gebica, late of that city, deceased. The appeal was tried in the superior court and, on the motion of the appellee, the trial justice directed a verdict sustaining the will. The appellants have brought the case here on their exception to this ruling.

The only real question presented by appellants' exception is whether or not there is any evidence in the record from which the jury could reasonably find that the testator was subject to undue influence at the time he made his will. There is no evidence of lack of testamentary capacity to be weighed against the evidence of such capacity and no question was raised as to the evidence of the formal execution of the will, so that there is no need, in our opinion, to consider either of these reasons of appeal.

The trial justice, in a running colloquy with appellants' counsel prior to ruling on the appellee's motion for a directed verdict, analyzed the evidence and explicitly pointed out wherein it was lacking as a basis upon which the jury could reasonably find for the appellants. In his analysis he definitely and clearly answered several questions which appellants' counsel propounded by way of argument in support of

their contention that there was such evidence. From our reading of the transcript we agree with the trial justice and are of the opinion that he did not err in granting the appellee's motion for a directed verdict.

Appellants have urged upon us the repeated expressions of this court to the effect that undue influence is seldom susceptible of direct proof, but is most often only possible of proof by indirect or circumstantial evidence, and that reasonable inferences which may be drawn from such evidence are of persuasive force and must be submitted to the judgment of the jury; and they cite the following cases: *Young* v. *Young,* 56 R. I. 401; *Talbot* v. *Bridges,* 54 R. I. 337; *Goff* v. *Clinton,* 53 R. I. 70; *Huebel* v. *Baldwin,* 45 R. I. 40; *Dart* v. *Rhode Island Hospital Trust Co.,* 45 R. I. 173; *Mullen* v. *McKeon,* 25 R. I. 305, 311. There is no controversy here over the law as it has been declared in those cases.

The controversy arises in this case over the facts and, more particularly, over what the testator actually told the scrivener of the will, through an interpreter, to put in his will and whether or not such controversy raised an inference or inferences of undue influence over the testator, which reasonably called for the judgment of the jury, free from the intervention of the trial justice.

The instant will was made by the testator about two weeks before his death. The testator was a single man without any near relatives in this country, although he had a nephew and niece in Poland, the country from which he emigrated to the United States some twenty-five years before his death. By his will he provided that $500 should be spent for his funeral and that all the residue after such payment and the payment of other expenses should be given to Joseph Stasz and Michael Wojnar, share and share alike. These two men were intimate friends of the testator, and had known him for many years. Wojnar performed personal services for him, and, on matters pertaining to his welfare, he often sought

advice from Stasz. Before he made his will the testator had spoken to Stasz about it and had asked the latter to get him a lawyer. Complying with this request, Stasz told his daughter Irene to inform his lawyer, John J. Mee, Esq., of Woonsocket, of the testator's desire, and to ask him to come to the testator's house, which she did.

Mr. Mee arrived later that same day between five and six o'clock and found the testator sick in bed. Stasz was already in the room and his daughter Irene came in with Mr. Mee. Later, as the will was being read back to the testator, Michael Wojnar came in. A neighbor, Stephen Sztorbow, who lived in the apartment upstairs, also was in the room, he having been asked to be an attesting witness to the will. There were thus six people in the room, including the testator and his lawyer, during the progress of drafting the will and at the time of its execution. Some point is made of this fact by the appellants but, of itself, it is, in our opinion, of no consequence, although ordinarily it is better practice to consult a testator privately, if this can be done, in order to avoid suspicion of undue influence or coercion. In this instance, the sound judgment of the lawyer must have prompted him to act otherwise and, as the trial justice observed, it may be that under the circumstances such was the wiser course.

The testator did not speak or understand the English language sufficiently to instruct his lawyer as to his desires, and Mr. Mee did not understand or speak Polish, the native tongue of the testator. Irene Stasz, who was a school teacher and versed in both languages, consented, upon request of the testator, to act as interpreter. Through her he communicated his wishes to Mr. Mee who then and there wrote them down in longhand in the customary form of a last will and testament. After he had finished drafting the will he read each of its provisions separately and Miss Stasz translated into Polish. At the end of the reading by her of each provision, the testator was asked in Polish by Miss Stasz if that was

what he wanted or if it expressed his wishes, and in each instance he said that it did. After this was done Mr. Mee signed the testator's name to the instrument, while the testator touched the pen. Then testator made his mark, he not being able to write. Mr. Mee and Stephen Sztorbow then signed as witnesses.

It is fair to say that the whole controversy over the will grows out of the manner in which the will was drafted with the aid of Irene Stasz as interpreter. In the first place, appellants claim that the $500 was to go to the church and that the testator did not say anything about his funeral. They rely on the testimony of witness Sztorbow, who at one time testified that the testator said in Polish, when telling Miss Stasz what to put in his will, that he wanted to give $500 to the church.

It appears, however, from later testimony of the same witness, that this was coupled with a statement by the testator as to providing for his funeral. Miss Stasz testified that the testator did not tell Mr. Mee to give $500 to any church but wanted to provide for his funeral. The trial justice held that the only reasonable inference that could be drawn from all the testimony of Sztorbow was that the testator desired to provide for his burial with religious services at a church but did not desire to make a bequest of $500 to a church.

There are many reasons to be found in the evidence why we also think such is the only inference. There was no evidence that the testator belonged to any church. If he wanted to make a gift to some church, it does not appear what church, even if we take Sztorbow's testimony, as appellants would have it, unqualified and unexplained by his later testimony. Further, according to the testimony of a priest who visited him later in the hospital, testator said to the witness that he had made a will and that Wojnar and Stasz were to get all his money after his funeral expenses were paid.

Finally, the testator did not object to the provision in his will for funeral expenses when it was read to him in Polish. At least Sztorbow, who understands both English and Polish and who was standing by and heard the will read, does not testify that the testator objected; and he does not testify that Miss Stasz did not read that provision to the testator in Polish exactly as it appears in English in the will. And further it does not appear from his testimony that he objected to the provision for testator's funeral as not being what testator told Miss Stasz. On the whole, it is impossible to come to any other conclusion but that the testator was thinking of his funeral, and if he said anything about a church, it was in connection with his funeral and the expense thereof.

In the second place, the appellants claim that when Miss Stasz asked him what he would do with the rest of his money, he said nothing, and that she then suggested or urged that he give it to her father and Michael Wojnar. Again they rely upon some of the testimony of Sztorbow for this contention. But if we put ourselves fairly and reasonably in the position of Miss Stasz as an interpreter, the fact is that no such conclusion is inferable from the evidence, either in the testimony of Sztorbow or Miss Stasz, or both of them taken together.

The interpreter was trying as best she could to find out what this man, who was practically alone in the world, with no kin for whom he cared, wanted to do with his money. She knew that he had a niece and nephew in Poland and she had asked him if he wanted to remember them, and he answered positively, "No, no." And then she inquired as to his old friends Stasz and Wojnar. At first he said nothing, but later, when she asked him if he wanted to leave them the rest of his money equally, he said yes, that was what he wanted. Sztorbow does not deny this nor does he testify that the testator objected to it when the provision was read back to him.

On the contrary, the uncontradicted testimony is that the testator assented to it, and that later, when alone in the hospital, he told the priest, who prepared him for death, that he had given the rest of his money to Stasz and Wojnar. Here again we find it impossible to draw any inference, other than that the testator freely intended to give the rest of his money to his old friends, who, from all the testimony, would appear to have been closest to him in interest and affection. The uncontradicted evidence as to his attitude toward his own kin in Poland was that, about two years before making his will, he had become much displeased with them because a large sum of money which he had sent to them was not expended for certain real estate as he had suggested.

The appellants' exception to the granting of the appellee's motion is overruled, and the case is remitted to the superior court for further proceedings following the verdict.

*Arthur L. Conaty, Frank F. Pinkos,* for appellants.

*John J. Mee,* for appellee.